**BROWN KWON & LAM LLP**
Angela Kwon, Esq. (AK7296)
William Brown, Esq. (WB6828)
521 Fifth Avenue, Suite 1174
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
akwon@bkllawyers.com
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JESSICA JOHNSON,** *on behalf of herself and others similarly situated*, **Plaintiff,** - against - **STRATEGIC FINANCIAL SOLUTIONS, LLC, RYAN SASSON, DANIEL BLUMKIN, and KIMBERLY CELIC,** **Defendants.** | **Case No: 20-cv-8565** **COLLECTIVE ACTION COMPLAINT** |

Plaintiff Jessica Johnson ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Collective Action Complaint against Defendants, Strategic Financial Solutions, LLC (hereinafter, the "Corporate Defendant"), Ryan Sasson, Daniel Blumkin and Kimberly Celic (collectively, the "Individual Defendants," and together with Corporate Defendant, "Defendants") and alleges as follows:

**INTRODUCTION**

1.      Plaintiff alleges, on behalf of herself and similarly situated employees who elect to opt in to this action, pursuant to the Equal Pay Act ("EPA") under the Fair Labor Standards Act

1

("FLSA"), 29 U.S.C. § 206, and the collective action provision of 29 U.S.C. § 216(b), that Defendants engaged in wage discrimination on the basis of sex, and seeks to recover (1) back pay, (2) liquidated damages, and (3) attorneys' fees and costs, for the deprivation of their stautotry rights resulting from Defendants' discriminatory employment practices.

2.      Plaintiff further alleges, on behalf of herself and similarly situated employees, pursuant to the New York Equal Pay Act ("NYEPA") under the New York Labor Law ("NYLL") § 194, and supporting New York State Department of Labor Regulations, that Defendants engaged in wage discrimination on the basis of sex, and seeks to recover (1) back pay, (2) liquidated damages, and (3) attorneys' fees and costs, for the deprivation of their statutory rights resulting from Defendants' discriminatory employment practices.

3.      Plaintiff further alleges, pursuant to the EPA under the FLSA and the NYEPA under the NYLL, that Defendants retaliated against Plaintiff for speaking out about Defendants' sex-based wage discrimination, and seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

4.      Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendants engaged in discriminatory employment practices on the basis of sex, subjected Plaintiff to a hostile work environment, and retaliated against Plaintiff for speaking out about Defendants' discrimination, and seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

6.      This Court also has jurisdiction over Plaintiff's claims under the FLSA and Equal Pay Act pursuant to 29 U.S.C. § 216(b).

7.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

9.      Plaintiff Jessica Johnson is an adult who resides in Essex County, New Jersey.

10.     Plaintiff was employed by Defendants and, at all relevant times, met the definition of an "employee" under the applicable laws.

11.     Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### *Defendants*

12.     At all relevant times, Defendants owned and operated "Strategic Financial Solutions," a financial services company that tailors debt relief options including debt consolidation loans, and debt resolution and credit card modification programs, located at 711 Third Avenue, 6th Floor, New York, NY 10017.

13.     At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

14. At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

15. Corporate Defendant Strategic Financial Solutions, LLC is a limited liability company organized under the laws of the State of Nevada and is registered as a foreign limited liability company in the State of New York.

16. Corporate Defendant Strategic Financial Solutions, LLC has a principal place of business located at 711 Third Avenue, 6th Floor, New York, NY 10017 and an address for service of process located at 875 Avenue of the Americas, Suite 501, New York, NY 10001.

17. At all relevant times, Corporate Defendant Strategic Financial Solutions, LLC has done business as "Strategic Financial Solutions."

18. At all relevant times, Corporate Defendant Strategic Financial Solutions, LLC met the definition of an "employer" under the applicable laws.

19. At all relevant times, Corporate Defendant Strategic Financial Solutions, LLC had an annual dollar volume of revenue in excess of $500,000.

20. At all relevant times, Corporate Defendant Strategic Financial Solutions, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

21. At all relevant times, Individual Defendant Ryan Sasson was an owner, co-founder, and the Chief Executive Officer ("CEO") of Strategic Financial Solutions.

22. At all relevant times, Individual Defendant Ryan Sasson was a principal of the Corporate Defendant.

23.     At all relevant times, Individual Defendant Ryan Sasson was an "employer" or an "aider and abettor" within the meaning of the applicable laws.

24.     At all relevant times, Individual Defendant Ryan Sasson was directly involved in managing the operations of Strategic Financial Solutions.

25.     At all relevant times, Individual Defendant Ryan Sasson had authority over personnel or payroll decisions and the employment policies, practices, and procedures at Strategic Financial Solutions.

26.     At all relevant times, Individual Defendant Ryan Sasson had the power to hire, fire, promote or discipline Plaintiff and similarly situated employees, and control the terms and conditions of their employment at Strategic Financial Solutions, including their work assignments, work schedules, pay and responsibilities.

27.     At all relevant times, Individual Defendant Ryan Sasson had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Strategic Financial Solutions.

28.     At all relevant times, Individual Defendant Ryan Sasson had the power to prevent or stop any unlawful practices that harmed Plaintiff and similarly situated employees at Strategic Financial Solutions.

29.     At all relevant times, Individual Defendant Ryan Sasson had the power to maintain employment records, including any time and pay records, of employees at Strategic Financial Solutions.

30.     At all relevant times, Individual Defendant Daniel Blumkin was an owner, co-founder, and the Chief Sales Officer of Strategic Financial Solutions.

31.     At all relevant times, Individual Defendant Daniel Blumkin was a principal of the Corporate Defendant.

32.     At all relevant times, Individual Defendant Daniel Blumkin was an "employer" or an "aider and abettor" within the meaning of the applicable laws.

33.     At all relevant times, Individual Defendant Daniel Blumkin was directly involved in managing the operations of Strategic Financial Solutions.

34.     At all relevant times, Individual Defendant Daniel Blumkin had authority over personnel or payroll decisions and the employment policies, practices, and procedures at Strategic Financial Solutions. Individual Defendant Daniel Blumkin interviewed and hired Plaintiff.

35.     At all relevant times, Individual Defendant Daniel Blumkin had the power to hire, fire, promote or discipline Plaintiff and similarly situated employees, and control the terms and conditions of their employment at Strategic Financial Solutions, including their work assignments, work schedules, pay and responsibilities.

36.     At all relevant times, Individual Defendant Daniel Blumkin had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Strategic Financial Solutions.

37.     At all relevant times, Individual Defendant Daniel Blumkin had the power to prevent or stop any unlawful practices that harmed Plaintiff and similarly situated employees at Strategic Financial Solutions.

38.     At all relevant times, Individual Defendant Daniel Blumkin had the power to maintain employment records, including any time and pay records, of employees at Strategic Financial Solutions.

39.     At all relevant times, Individual Defendant Kimberly Celic was the head of human resources also known as the Chief People Officer.

40.     At all relevant times, Individual Defendant Kimberly Celic was a principal of the Corporate Defendant.

41.     At all relevant times, Individual Defendant Kimberly Celic was an "employer" or an "aider and abettor" within the meaning of the applicable laws.

42.     At all relevant times, Individual Defendant Kimberly Celic was directly involved in managing the operations of Strategic Financial Solutions.

43.     At all relevant times, Individual Defendant Kimberly Celic had authority over personnel or payroll decisions and the employment policies, practices, and procedures at Strategic Financial Solutions.

44.     At all relevant times, Individual Defendant Kimberly Celic had the power to hire, fire, promote or discipline Plaintiff and similarly situated employees, and control the terms and conditions of their employment at Strategic Financial Solutions, including their work assignments, work schedules, pay and responsibilities.

45.     At all relevant times, Individual Defendant Kimberly Celic had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Strategic Financial Solutions.

46.     At all relevant times, Individual Defendant Kimberly Celic had the power to prevent or stop any unlawful practices that harmed Plaintiff and similarly situated employees at Strategic Financial Solutions.

47.     At all relevant times, Individual Defendant Kimberly Celic had the power to maintain employment records, including any time and pay records, of employees at Strategic Financial Solutions.

## ADMINISTRATIVE PROCEDURES

48.     Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten (10) days of its filing, thereby satisfying the notice requirements of this action.

49.     Plaintiff has complied with any and all other prerequisites to filing this action.

## EPA COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiff brings the First Cause of Action, the Equal Pay Act claims, on behalf of herself and all similarly situated current and former female employees in the Negotiations Department employed at Strategic Financial Solutions owned, operated, and/or controlled by Defendants, from the date that is three (3) years prior to the filing of this Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("EPA Collective Members").

51.     At all relevant times, Plaintiff and EPA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and EPA Collective Members wages equal to that of their male counterparts for equal work performed. Plaintiff's claims stated herein are essentially the same as those of the other EPA Collective Members.

52.     All the work and pay rates that Plaintiff and EPA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of their work and pay rates.

53.     Defendants are aware or should have been aware that federal law required them to pay employees equally, given equal pay for equal work in the same establishment.

54.     For purposes of notice and other purposes related to this collective action, the names and contact information of the EPA Collective Members are readily available from Defendants' records.

## STATEMENT OF FACTS

55.     Ms. Jessica Johnson is an African American female who was employed by Strategic Financial Solutions in its New York City office, located at 711 Third Avenue, 6th Floor, New York, NY 10017, for over eight (8) years from on or around March 12, 2012 until on or around April 14, 2020.

56.     Throughout her employment with Defendants, Ms. Johnson received outstanding performance evaluations.

57.     Ms. Johnson was first hired on or March 12, 2012 as a "client intake specialist" in the Negotiations Department. In or around March 2013, Ms. Johnson's title was changed to "litigation support representative" in the Negotiations Department. In or around 2014, Ms. Johnson's title was changed to "litigation support team lead," which was a supervisory position in the Negotiations Department.

58.     In or around 2015, Ms. Johnson's title was changed to "litigation support supervisor" in the Negotiations Department, although her job duties remained the same. It was around this time that Ms. Johnson noticed that Caucasian and male employees, working similar, or even lower level positions, were being paid at higher rates than her.

59.     In or around 2016, Ms. Johnson applied for a promotion to become a "litigation negotiations manager." After the first-round interview, Ms. Johnson was told by the interviewers and direct supervisor that she would be advancing to the second-round interview. Soon after, however, Ms. Johnson was told that the head of human resources, Kimberly Celic, denied Ms. Johnson the opportunity for a second-round interview. The promotion was given to a less senior and less qualified male employee, Omar Graves. Rather than promoting the more senior and more experienced Ms. Johnson to the manager position, Defendants changed her title to "pre-litigation negotiations supervisor," which was a subordinate position to managers in the Negotiations Department, including Mr. Graves. Defendants did not give a pay raise to Ms. Johnson with the title change.

60.     In or around March 2018, Ms. Johnson again applied for the same promotion, "litigation negotiations manager," and once again the promotion was given to a less qualified male employee.

61.     Subsequently, Defendants changed the title of several employees in the Negotiations Department. During this time, Defendants changed Ms. Johnson's title to "pre-litigation negotiations manager." While Ms. Johnson's job duties remained the same, her pay was changed from hourly to salary.

62.     In or around 2017, Defendants opened an office in Buffalo, NY. Starting in or around April 2019, Defendants began sending managers from the New York City office to work at the Buffalo office for two days per week.

63.     In or around mid-June 2019, Ms. Johnson was told to go to Buffalo to meet with their management team. Ms. Johnson was assigned to go with a manager, Omar Graves. After arriving in Buffalo, Ms. Johnson and Mr. Graves and met with Buffalo-based negotiation managers

and senior managers who took them out for food and drinks. After, Ms. Johnson and Mr. Graves proceeded to their hotel. Neither Ms. Johnson nor Mr. Graves were intoxicated when they arrived at the hotel. Mr. Graves' hotel room was on a higher floor than Ms. Johnson's. After arriving at her floor in the elevator, Ms. Johnson and Mr. Graves said good night, whereupon Ms. Johnson proceeded to her room. About twenty (20) minutes after Ms. Johnson had undressed and gotten in bed to rest, Mr. Graves called her hotel room phone to say that he could not sleep and asked if he could come down to her room. Ms. Johnson turned down the request and told Mr. Graves that she was already in bed. Mr. Graves continued to try to persuade Ms. Johnson, saying that she could get back into bed after opening the door to let him in. Ms. Johnson again declined and told Mr. Graves that she did not feel comfortable doing so as he is a married man. Mr. Graves responded, "What happens in Buffalo, stays in Buffalo," and continued to ask if he could come down to Ms. Johnson's hotel room, if just to watch television with her. When Ms. Johnson once more declined, Mr. Graves said, "I'm going to come down. I will knock and hopefully you will let me in. I just want to watch tv with you." When Ms. Johnson again declined, Mr. Graves said, "I'm coming down in 5 minutes. Don't make me stand in the hallway and look stupid." Sure enough, about five (5) minutes later, Mr. Graves started banging on Mr. Johnson's door. Mr. Graves knocked on the door for a full fifteen (15) minutes, pleading to come in, saying, "You got me out here looking stupid." Disturbed and frightened, Ms. Johnson called a colleague to ask what to do. Eventually, Ms. Johnson went up to the door and had to say, "I don't know what you are doing, but you are not coming in here." Eventually, Mr. Graves walked away.

64.     The following day, Mr. Graves acted like nothing had happened. Ms. Johnson felt extremely uncomfortable and embarrassed by the situation, and she was required to work closely with him.

65.     Ms. Johnson and Mr. Graves returned to New York City from Buffalo on a Friday evening. On the following Monday, Ms. Johnson immediately reported the incident to human resources. Ms. Johnson spoke with human resources associate, Naghma Khan. After Ms. Johnson informed Ms. Khan about the incident, Ms. Khan responded, "Well, it didn't happen on company time so it's not our problem." Further, during this meeting, Ms. Khan made several comments suggesting that Ms. Johnson was somehow responsible for the incident. For example, Ms. Khan asked, "Why didn't you just hang up the phone? That's what I would have done." Based on the meeting with Ms. Khan, it was clear that Defendants did not have procedures in place to handle this type of situation. Ms. Johnson had to insist that she felt uncomfortable working with Mr. Graves, after which Ms. Khan reluctantly agreed to speak with Mr. Graves.

66.     Within three (3) days, without consulting with Ms. Johnson first, Ms. Khan called Ms. Johnson into the office with Mr. Graves. Ms. Johnson immediately felt blindsided and extremely uncomfortable about the entire situation. Ms. Khan made Ms. Johnson sit in a room with Mr. Graves and tell him why she felt upset. Ms. Khan proceeded to tell Ms. Johnson that Mr. Graves was going to apologize, and that was going to be the end of it. Ms. Khan then outrageously said, "You can't blame him for trying. He made an attempt." During Graves' so-called apology, he mirrored Ms. Khan's statement saying, "I was just trying."

67.     Defendants failed to take any action to remedy the situation. Ms. Johnson continued to feel uncomfortable and stressed working with Mr. Graves and felt even more so after the forced meeting with Mr. Graves and Ms. Khan. Ms. Johnson attempted to avoid Mr. Graves in the office, but it was impossible. Mr. Graves was not subject to any further investigation or discipline in relations to Ms. Johnson's complaint. Until the end of her employment with Defendants, Ms. Johnson continued to be afraid that something similar would happen again.

68.     In or around August 2019, Ms. Johnson discovered that a male employee in her department who was hired in 2018 was ten years younger, and was significantly less experienced than Ms. Johnson, was getting paid an annual salary of $70,000. At the time, Ms. Johnson was earning around $55,000 per year.

69.     Shocked, Ms. Johnson spoke with several female colleagues who said that they made the same amount as her. Based on her conversations with her colleagues, Strategic Financial Solutions had two different pay scales, one for male employees and another for female employees, even though the job duties they performed were the same.

70.     Ms. Johnson immediately raised this issue regarding the unfair pay gap to human resources associate, Ms. Khan, who struggled to provide an explanation as to why Ms. Johnson and a significantly less experienced, lower level male employee had such a substantial pay gap. Instead, Ms. Khan simply responded the company would look into the standard pay for managers in the industry.

71.     Subsequently, Ms. Johnson followed up with Ms. Khan multiple times about her initial complaint regarding the gender pay gap. Nevertheless, Ms. Khan kept giving Ms. Johnson the runaround (e.g., "I'll get back to you.") without resolution.

72.     Frustrated, Ms. Johnson requested a meeting with the head of human resources, Ms. Kimberly Celic, to complain about the substantial pay gap between male and female employees in the Negotiations Department. Ms. Celic too never provided Ms. Johnson with any type of raise or an explanation regarding the pay discrepancy.

73.     In or around October 2019, due to the discomfort and stress of having to continue to work with Mr. Graves and the mounting frustration over Defendants failure to remedy the substantial pay gap between male and female employees in the Negotiations Department, Ms.

Johnson requested that she be interviewed to be transferred to the Sales Department. Consequently, Ms. Johnson was transferred to the Sales Department and her title was changed to "financial consultant," which was her position until the end of her employment with Defendants.

74.    Shortly after making the above complaints and being transferred to the Sales Department, Ms. Johnson started being issued disciplinary warnings.

75.    In or around February 2020, Ms. Johnson learned that a man with no management experience interviewed for the same position as her prior manager position in the Negotiations Department and was offered an annual salary of $75,000.

76.    In or around March 2020, Ms. Johnson was told to work from home due to the COVID-19 pandemic. In addition, Defendants told Ms. Johnson that she would be subject to a "zero tolerance system" under which she would be automatically terminated if she is unable meet her sales quota. Despite a substantial reduction in new sales leads that Defendants provided to Ms. Johnson, Defendants' sales quota for Ms. Johnson was not adjusted.

77.    Under these difficult circumstances, Ms. Johnson was able to make two deals in March 2020. As the reduction in new sales leads was ongoing and getting worse during this time, Ms. Johnson spoke to her supervisor several times about the lack of new leads that she was receiving from Defendants. Ms. Johnson's supervisor acknowledged Defendants' shortage of new sales leads that Ms. Johnson can pursue. Nonetheless, Defendants continued to impose the same unattainable sale quota.

78.    On April 1, 2020, Defendants issued a written warning requiring Ms. Johnson to meet half of her monthly sales quota by April 15, 2020. Johnson was not able to reach Defendants' quota and was terminated on April 14, 2020.

79.     Ms. Johnson later learned that most employees in her department were not able to reach their sales quota in March and April 2020, yet many did not receive a written warning or were terminated.

80.     Ms. Johnson was terminated for her numerous complaints about the gender pay gap between male and female employees and about the sexually hostile work environment.

81.     Upon information and belief, Ms. Johnson was replaced by a male employee.

82.     At all times, all employees employed by Defendants in the Negotiations Department at Strategic Financial Solutions, including Ms. Johnson and the EPA Collective Members and their male counterparts, performed the same or similar duties, under the same work conditions.

83.     At all times, all employees employed by Defendants in the Negotiations Department at Strategic Financial Solutions, including Ms. Johnson and the EPA Collective Members and their male counterparts, worked about forty (40) hours per week.

84.     At all times, Ms. Johnson and EPA Collective Members were paid at pay rates less than their male counterparts for the same work performed.

85.     All Defendants had knowledge that Ms. Johnson was subject to a hostile work environment and sex-based disparate treatment and failed to take immediate and appropriate corrective action.

86.     Ms. Johnson suffered from severe emotional distress due to Defendants' failure to correct the sex-based disparate treatment and hostile work environment at Strategic Financial Solutions. After Ms. Johnson reported sexual harassment to HR and complained of sex-based wage discrimination, adverse action was taken against her, ultimately leading to her termination. As a

direct result of Defendants' discriminatory and retaliatory action, Ms. Johnson suffered, and continues to suffer harm.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### (Sex-Based Wage Discrimination in Violation of the Equal Pay Act)
### *Against All Defendants*

87.     Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

88.     Plaintiff and EPA Collective Members are employees and protected persons within the meaning of the Equal Pay Act and Defendants are covered employers under the Equal Pay Act.

89.     Under the Equal Pay Act, employers are prohibited from "paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

90.     Defendants violated Plaintiff's and EPA Collective Members' statutorily protected rights under the Equal Pay Act by paying higher wages to employees of the opposite sex for the performance of equal work, on jobs requiring equal skill, effort, and responsibility, and performed under similar working conditions.

91.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's and EPA Collective Members' protected rights under the Equal Pay Act.

92.     As a direct and proximate result of Defendants' unlawful employment practice in violation of the Equal Pay Act, Plaintiff and EPA Collective Members has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

93.     Due to Defendants' violations of the Equal Pay Act, Plaintiff and EPA Collective Members are entitled to recover from Defendants: (1) economic damages; (2) liquidated damages; and (3) attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the Equal Pay Act)
#### *Against All Defendants*

94.     Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

95.     Plaintiff is an employee and protected person within the meaning of the Equal Pay Act and Defendants are covered employers under the Equal Pay Act.

96.     The Equal Pay Act prohibits employers from punishing employees for asserting their rights to be free from sex-based wage discrimination on the basis of sex.

97.     Defendants retaliated against Plaintiff on the basis of her protected activity under the Equal Pay Act by making Plaintiff's work more difficult, reprimanding Plaintiff, increasing scrutiny, and terminating Plaintiff's employment, after she made an internal complaint regarding sex-based wage discrimination.

98.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the Equal Pay Act, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

99.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the Equal Pay Act, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

100.    Defendants' unlawful retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the Equal Pay Act, for which she is entitled to an award of punitive damages.

101.    Due to Defendants' violations of the Equal Pay Act, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees.

**THIRD CAUSE OF ACTION**
**(Sex-Based Wage Discrimination in Violation of the New York Equal Pay Act)**
***Against All Defendants***

102.    Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

103.    Plaintiff is an employee and protected person within the meaning of the NYEPA and Defendants are covered employers under the NYEPA.

104.    Under the NYEPA, "[n]o employee with status within one or more protected class or classes shall be paid a wage at a rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for: (a) equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, or (b) substantially similar work, when viewed as composite of skill, effort, and responsibility, and performed under similar working conditions.". NYLL § 194.

105.    Defendants violated Plaintiff's statutorily protected rights under the NYEPA by paying higher wages to employees of the opposite sex for the performance of equal work, on jobs requiring equal skill, effort, and responsibility, and performed under similar working conditions.

106.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYEPA.

107.    As a direct and proximate result of Defendants' unlawful employment practice in violation of the NYEPA, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

108.    Due to Defendants' violations of the NYEPA, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) liquidated damages; and (3) attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of the New York Equal Pay Act)**
*Against All Defendants*

109.    Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

110.    Plaintiff is an employee and protected person within the meaning of the NYEPA and Defendants are covered employers under the NYEPA.

111.    The NYEPA prohibits employers from punishing employees for asserting their rights to be free from sex-based wage discrimination.

112.    Defendants retaliated against Plaintiff on the basis of her protected activity under the NYEPA by making Plaintiff's work more difficult, reprimanding Plaintiff, increasing scrutiny, and terminating Plaintiff's employment, after she made an internal complaint regarding sex-based wage discrimination.

113.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYEPA, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

114.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYEPA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

115.   Defendants' unlawful retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYEPA, for which she is entitled to an award of punitive damages.

116.   Due to Defendants' violations of the NYEPA, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the New York State Human Rights Law)
### *Against All Defendants*

117.   Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

118.   Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

119.   Defendants violated Plaintiff's statutorily protected rights under the NYSHRL by engaging in discriminatory employment practices and subjecting Plaintiff to disparate treatment, including a sexually hostile work environment and inferior terms, conditions, or privileges of employment, on the basis of her sex.

120.   Defendants discriminated against Plaintiff on the basis of her sex in violation of the NYSHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy an unlawfully discriminatory environment.

121.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

122.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

123.    Defendants' unlawful discriminatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

124.    Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of sex, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the New York State Human Rights Law)**
***Against All Defendants***

125.    Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

126.    Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

127.    Defendants retaliated against Plaintiff on the basis of her protected activity under the NYSHRL by making Plaintiff's work more difficult, reprimanding Plaintiff, increasing scrutiny, and terminating Plaintiff's employment, after she made an internal complaint regarding workplace sex discrimination and sexual harassment.

128.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

129.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

130.    Defendants' unlawful retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

131.    Due to Defendants' violations of the NYSHRL, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Aiding and Abetting Discrimination and Retaliation in Violation of the New York State Human Rights Law)
### *Against Defendants Sasson, Blumkin and Celic*

132.    Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

133.    Defendants Sasson, Blumkin and Celic knowingly or recklessly aided and abetted the unlawful employment practices and discrimination and retaliation committed against Plaintiff in violation of the NYSHRL.

134.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

135.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

136.    Defendants' unlawful conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

### EIGHTH CAUSE OF ACTION
**(Discrimination in Violation of the New York City Human Rights Law)**
***Against All Defendants***

137.    Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

138.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

139.    Defendants violated Plaintiff's statutorily protected rights under the NYCHRL by engaging in discriminatory employment practices and subjecting Plaintiff to disparate treatment, including a sexually hostile work environment and inferior terms, conditions, or privileges of employment, on the basis of her sex.

140.    Defendants discriminated against Plaintiff on the basis of her sex in violation of the NYCHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy an unlawfully discriminatory environment.

141.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

142.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

143.    Defendants' unlawful discriminatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

144.    Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of sex, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## NINETH CAUSE OF ACTION
### (Retaliation in Violation of the New York City Human Rights Law)
### *Against All Defendants*

145.    Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

146.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

147.    Defendants retaliated against Plaintiff on the basis of her protected activity under the NYCHRL by making Plaintiff's work more difficult, reprimanding Plaintiff, increasing

scrutiny, and terminating Plaintiff's employment, after she made an internal complaint regarding workplace sex discrimination and sexual harassment.

148.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

149.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

150.    Defendants' unlawful retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

151.    Due to Defendants' violations of the NYCHRL, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees.

## TENTH CAUSE OF ACTION
### (Aiding and Abetting Discrimination and Retaliation in Violation of the New York City Human Rights Law)
### *Against Defendants Sasson, Blumkin and Celic*

152.    Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

153.    Defendants Sasson, Blumkin and Celic knowingly or recklessly aided and abetted the unlawful employment practices and discrimination and retaliation committed against Plaintiff in violation of the NYCHRL.

154.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

155.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

156.    Defendants' unlawful conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff on behalf of herself and EPA Collective Members, respectfully requests that this Court grant the following relief:

a.    Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the Equal Pay Act;

b.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the Equal Pay Act and the NYEPA;

c.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the NYSHRL and NYCHRL;

d.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

e.  An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff for all monetary and/or economic damages, including loss of past and future income, compensation and benefits;

f.  An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress;

g.  An award of punitive damages against Defendants, in an amount to be determined at trial;

h.  An award of liquidated damages against Defendants, in an amount to be determined at trial;

i.  Pre-judgment and post-judgment interest;

j.  An award of costs that Plaintiff has incurred in this action, including but not limited to expert witness fees, as well as reasonable attorneys' fees; and

k.  Such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  October 14, 2020        Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:    */s/ Angela Kwon*

Angela Kwon, Esq. (AK7296)
William Brown, Esq. (WB6828)
521 Fifth Avenue, Suite 1174
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
akwon@bkllawyers.com
wbrown@bkllawyers.com
*Attorneys for Plaintiff*