**BROWN KWON & LAM LLP**

Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
Email: info@bkllawyers.com



November 23, 2020

**Via ECF and Electronic Mail**
Hon. Katherine Polk Failla, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      RE:    *Johnson v. Strategic Financial Solutions, LLC, et al.*, Case No. 20-cv-8586 (KPF)

Dear Judge Failla:

      This firm represents Plaintiff, Jessica Johnson, in the above-referenced matter. Plaintiff commenced this action on October 14, 2020, alleging that Defendants violated the rights of Plaintiff and similarly situated female employees of Strategic Financial Solutions ("SFS") under the federal and New York Equal Pay Act by engaging in systematic wage discrimination on the basis of sex. Further, Plaintiff alleges that Defendants subjected her to a sexually hostile work environment and unlawfully terminated her employment in retaliation for engaging in protected activities. We write in response to Defendants' letter dated November 19, 2020 requesting a pre-motion conference in anticipation of their motions to compel arbitration, stay the action pending arbitration, and/or dismiss the Complaint. Plaintiff opposes Defendants' anticipated motions on the basis that the arbitration agreement in question, attached to Defendants' letter as Exhibit A (hereinafter, the "Agreement"), is clearly and demonstrably forged, and that Plaintiff never signed an arbitration agreement with Defendants. As Plaintiff is challenging the authenticity of the arbitration agreement itself, rather than the legal arguments included in Defendants' letter, Plaintiff respectfully requests that an evidentiary hearing be scheduled. Plaintiff is further seeking all available sanctions against Defendants.

      Defendants' in-house counsel, Marc Lemberg, provided this firm with the Agreement on October 15, 2020. Almost immediately, we noticed a number of glaring anomalies. Upon a more thorough review of the document, it becomes abundantly clear that the Agreement was fraudulently created. First and foremost, the signature on the front of the document is an <u>exact copy</u> of the signature on the last page of the Agreement. To clearly illustrate this fact to the Court, we have overlaid the signature on the first and last pages to show they are perfect copies. (See Exhibit 1). The top box on Exhibit 1 is the signature on the first page of the Agreement, and the middle box is the signature on the last page. The bottom box on Exhibit 1 is an overlay of the two signatures (The first page is in black font while the last page is seen in orange font). The overlay shows without any doubt that the two signatures are completely identical. Notably, even the signature lines on the first and last pages are the exact same length relative to the signature, and the first page has an inexplicable indent before the signature line begins. There is no logical explanation, absent intentional wrongdoing, why Defendants would copy Plaintiff's signature.

      There are multiple other anomalies with the Agreement, which when taken together, indicate that Defendants attached the signature page from another document Plaintiff signed, copied her signature, and placed it on the first page of the Agreement. For instance, on pages 1

through 14 of the Agreement, the page numbers at the bottom are in the same spot relative to the rest of the page. However, for the last page, the signature page, the page number is noticeably higher than on any other page, indicating that the page number was manually edited in to make it appear that the signature page is part of the Agreement. (See Exhibit 2). Moreover, as part of our investigation, we have obtained a non-disclosure agreement (which does not reference arbitration) from another SFS employee that has the same signature page as the one found on the Agreement, further supporting the contention that the signature page here likely originated from a separate document. Finally, content is inexplicably missing from the first page of the Agreement under the title "Trade Secrets/Confidential Information." (See Defs' Exhibit A).

Moreover, the circumstances under which the Agreement was produced to this firm are highly suspect. Plaintiff has been adamant from the start that she was especially careful about the documents she was asked to sign by SFS during her employment, and emphatically denies that she ever signed an arbitration agreement while working there.

During pre-filing discussions starting on September 18, 2020, Mr. Lemberg reported that Plaintiff had signed an arbitration agreement, but that the agreement only existed in hard copy in SFS' Manhattan office. Mr. Lemberg stated that someone from HR would be in that office the following week to locate the physical copy, and requested that Plaintiff hold off on any court filings in the meantime. Despite Mr. Lemberg's representations, two weeks later, Defendants had still not produced an arbitration agreement. On October 2, 2020, Mr. Lemberg again represented in an email that "a physical, hard copy arbitration agreement does exist," and stated that Defendants "have been delayed in finding it in the physical files" due to COVID-19-related office closures. Despite the delays, to avoid a waste of time and judicial resources, Plaintiff agreed to give Defendants an additional week, until October 9, 2020, to locate the arbitration agreement. When Defendants failed to produce an arbitration agreement or otherwise contact Plaintiff by the agreed upon deadline, Plaintiff went ahead and filed her Complaint on October 14, 2020.

The following day, on October 15, 2020, Mr. Lemberg produced the Agreement, stating that the agreement had been "found" and sent from HR earlier that day. After carefully reviewing the Agreement with Plaintiff, who unambiguously denies that she ever signed the Agreement, and discovering the anomalies discussed above, we still gave Defendants the benefit of the doubt and on October 19, 2020, requested an in-person inspection of the original physical document to assuage our doubts as to the authenticity of the Agreement. In an email response, Mr. Lemberg ignored our request for an inspection, but noted that it "took a while to locate the agreement in hard copy." On October 20, 2020, we again requested an in-person inspection of the Agreement. On October 21, 2020, Ms. Linda Joseph stated that she was retained as outside counsel for Defendants. Ms. Joseph agreed to our request for an in-person viewing of the original Agreement, which was scheduled to take place on October 30, 2020.

On October 29, 2020, just one day before the scheduled date for the in-person inspection, Ms. Joseph sent an email stating that SFS "has not been able to locate the original of the arbitration agreement" and that all that will be available for the in-person review will be a PDF copy, which had already been emailed to us on October 15, 2020. This is dubious, to say the least, considering the multiple emails and communications over the period of six (6) weeks which included repeated representations from SFS' in-house counsel that they possessed the original physical copy. It is simply outrageous that Defendants are attempting to dismiss

Plaintiff's lawsuit based on a document that they now admit to not having a physical copy of, and which includes unmistakable indications of being electronically doctored. This is after Plaintiff put Defendants' counsel on notice that there were serious concerns as to the authenticity of the Agreement.

In determining whether claims are subject to arbitration, the summary judgment standard applies "whether the relief sought is an order to compel arbitration or to prevent arbitration." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "If there is a genuinely disputed factual issue whose resolution is essential to the determination of the applicability of an arbitration provision, a trial as to that issue will be necessary; but where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011).

"The FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 57, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995). "The purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967) (emphasis added). Thus, though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. *See Opals on Ice Lingerie, Designs by Bernadette, Inc v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). Here, of course, the Agreement is unenforceable as Plaintiff's signature was clearly forged. As there is no valid enforceable agreement to arbitrate, Defendants' motion must be denied.

Moreover, the lack of a physical copy of the Agreement further warrants denial of Defendants' motion. Rule 1003 of the Federal Rules of Evidence states: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Here, Plaintiff has raised serious doubts as to the authenticity of the Agreement, and thus the electronic copy is inadmissible. The electronic copy of the Agreement is the only evidence Defendants can use to support their motion, because it is inadmissible, Defendants' motion is doomed to fail.

For the above stated reasons, Plaintiff respectfully requests that an evidentiary hearing be scheduled, in lieu of a motion briefing schedule, to determine the authenticity of the Agreement. At that hearing, Plaintiff intends to introduce expert testimony demonstrating, beyond any doubt, that the document is indeed forged. To the extent that the Court determines that Defendants fraudulently created the Agreement, such would demonstrate utter contempt for the judicial system. Worse yet, the clear motive for fabricating such a document is to evade certification of a collective action under the Equal Pay Act. In other words, Defendants perpetrated this fraud to prevent female employees, who are alleged to have been systematically underpaid, from being apprised of their rights to join this action. Finally, Defendants' conduct cast a shadow over the remainder of this litigation, as all other documents produced by Defendants in this case are now automatically suspect. Thus, regardless of whether Defendants proceed with their motion, Plaintiff is seeking all available sanctions.

We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ William Brown*

William Brown, Esq.
Brown Kwon & Lam, LLP
521 Fifth Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com

cc:   all parties via ECF and electronic mail

```
The Court is in receipt of the parties' pre-motion letters.  (Dkt.
#16, 17).  The parties are hereby ORDERED to appear for a video
conference to discuss the issues raised in the parties' letters.
The conference shall take place on December 4, 2020, at 11:00
a.m.  Information for accessing the conference will be distributed
in advance of the conference.  The Clerk of Court is directed to
file this Order in case number 20-cv-8565.

Dated:     November 30, 2020            SO ORDERED.
           New York, New York
```

*[signature: Katherine Polk Failla]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE